652

SANDRA SUE BRIDGES et al., Plaintiffs in Error, v. ERNEST E. HOUSEHOLDER, Defendant in Error.— 385 S.W.(2d) 314.

Eastern Section. October 9, 1964.

Certiorari Denied by Supreme Court December 21, 1964.

David E. Rogers, John B. Rayson and Stuart F. Dye, Knoxville, for plaintiffs in error.

Paul T. Gillenwater, Knoxville, for defendant in error.

McAMIS, P.J. The plaintiff below sustained injuries to his neck when the pick-up truck he was driving was

struck from the rear by a car driven by defendant Sandra Sue Bridges. The trial court instructed the jury to find for the plaintiff on the issue of negligence, submitting to the jury only the amount of the damages. Defendant has appealed from a verdict and judgment for $9,500.00.

It is not insisted the court erred in directing a verdict for the plaintiff on the issue of defendant's liability. The primary insistence is that the Court erred in instructing the jury with respect to permanent disability, it is said, in the absence of any evidence in the record upon which the jury could award damages for anything other than pain and suffering, medical expenses and temporary disability. The trial judge construed the testimony of plaintiff's witness, Dr. Edward L. Tauxe, as some evidence upon which the jury could base a finding of permanent disability and refused to charge the following request tendered by defendant:

"The statement of a physician who testified that his patient has sustained injuries which may or may not result in some permanent disability is not evidence that permanent disability has been sustained and it may not be considered by you for that purpose.

"A judgment cannot be based upon conjecture, speculation or surmise. The testimony of a physician as to the probable effect of an injury is admissible, but it must show that such result is reasonably certain and not a mere likelihood or possibility. A mere conjecture, or even a probability, does not warrant the giving of damages for future disability which may never exist."

The requested charge could only be taken as referring to Dr. Tauxe testimony and, if given, might well have left the inference in the minds of jurors that the Court

thought his testimony was not to be taken as supporting plaintiff's claim of permanent disability.

We must, therefore, look to Dr. Tauxe's testimony to determine whether, when viewed in its entirety, it is evidence which, if believed, would support a finding of some permanent disability as found by the trial judge.

At the time of the accident, on February 17, 1963, plaintiff was an employee of a service station. His duties required him to change tires, grease cars and do other things involving strenuous physical exertion, as well as turning and twisting while underneath cars. He was 51 years of age and, since sustaining an injury to his neck while playing football as a young man, has had what is referred to as a wryneck. As a result, he customarily held his head slightly to the left. Otherwise, this condition, prior to the collision, caused him no disability or pain in turning or twisting his head and neck.

When the pick-up truck was struck from the rear his head was thrown back against the bed of the truck, then forward with some violence causing what is sometimes referred to as a whiplash injury to his neck.

In describing the wryneck which plaintiff had prior to the accident, Dr. Tauxe testified:

"This condition * * * is brought about by fibrosis in this large muscle that extends from the middle of the breast bone at the base of the neck upward * * *. This muscle is rather unique in that it has a sheath around the muscle and when this muscle is injured * * * there is hemorrhage into the muscle, and by hemorrhaging into this muscle in a closed sheath, so to speak, it cuts off a certain amount of its own blood supply and it * * *

becomes a fibrous band which will not grow as the patient grows and, in many instances, actually contracts itself."

Dr. Tauxe testified that when plaintiff consulted him February 28, 1963, eleven days after he was injured, he found that he had a wryneck and also found, upon X-raying his neck, more evidence of arthritis than usual in a man 51 years of age; that for both reasons an injury of the type sustained by plaintiff was more severe than would usually be the case. He testified that, because of the fibrous condition, the muscle leading downward along the left side of plaintiff's neck would not stretch and when the head was thrown back and then forward some tearing of the muscle resulted. After extended unsuccessful therapeutic treatment, Dr. Tauxe placed plaintiff in the hospital where he made two incisions and removed this muscle. Until this operation was performed plaintiff, following the accident, experienced pain upon moving his head and neck. At the time of the trial, some weeks after the operation, Dr. Tauxe thought plaintiff was about ready to go back to work. This was a little more than a year after the accident.

After Dr. Tauxe had explained the condition of plaintiff's neck before the accident, the tearing of the fibrous muscle because of the accident and resulting pain upon motion such as involved in working at a service station, plaintiff's counsel asked Dr. Tauxe to give an opinion as to whether plaintiff would suffer any degree of permanent disability as a result of the accident, Dr. Tauxe replied that, in his opinion, plaintiff will likely have some permanent disability, *"my educated guess, my own opinion is that he will have some mild permanent disability as a result of his injury."* (Italics ours)

Later, Dr. Tauxe explained that by using the term "educated guess" he meant an opinion "based on a reasonable degree of medical certainty, training, etc." He stated that while plaintiff would in his opinion have such disability he would prefer not to attempt to give the percentage of disability.

It is true that, in addition to giving an opinion as to the permanent nature of plaintiff's disability, Dr. Tauxe stated, as pointed out by defendant's counsel, that it might or might not cause future disability. This it seems to us is merely a recognition on the part of the witness that medicine is not an exact science and that his prognosis might prove to be wrong. This is true in nearly every case and to hold with defendant would largely deprive courts and juries of the benefit of proof in the vast majority of cases.

Considering Dr. Tauxe's testimony in its entirety, we find nothing in Maryland Casualty Company v. Young, 211 Tenn. 1, 362 S.W.(2d) 241 or Nashville, C. & St. L. Ry. v. Reeves, 25 Tenn.App. 359, 157 S.W.(2d) 851, both of which are strongly relied upon by defendant, justifying the insistence that it is not evidence of permanent disability in some amount.

Affirmed.

Cooper and Parrott, JJ., concur.